# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| CHESAPEAKE BAY ENTERPRISES, INC., ) ) ) Appellant, ) v. ) ) PILLSBURY WINTHROP SHAW ) PITTMAN, LLP, et al., ) ) Appellees. ) | Civil Action No. 3:14cv00633–HEH |

## MEMORANDUM OPINION
### (Affirming the Decision of the United States Bankruptcy Court)

This appeal from the United States Bankruptcy Court (the "Bankruptcy Court") evolves from the process of liquidating the core assets of the debtor, Potomac Supply Corporation, located in Kinsale, Virginia. The central dispute before this Court focuses on rulings by the Bankruptcy Court pertaining to the disposition of a $500,000 deposit held in escrow by Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury"), counsel for the debtor. The appellant, Chesapeake Bay Enterprises, Inc. ("CBE"), claims immediate entitlement to the $500,000, which it deposited with Pillsbury as part of an asset purchase agreement.

In granting Pillsbury's motion for summary judgment and dismissing the claims against Pillsbury for conversion of the deposit and breach of fiduciary duty, the Bankruptcy Court concluded that Pillsbury's retention of the deposit was proper pending that court's resolution of competing claims of ownership. This appeal followed.

Both CBE and Pillsbury have filed memoranda supporting their respective positions. The facts and legal contentions are adequately presented in the materials before the Court. Since the findings of the Bankruptcy Court stand on sound footing, oral argument would not aid in the decisional process.

The standard of review applied by this Court is well-settled. The Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual findings for clear error. *In re Harford Sands, Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). For the reasons that follow, this Court will affirm the decision of the Bankruptcy Court articulated in its opinion of April 23, 2014.[1] Although the underlying facts are a bit convoluted, the issues presented on this appeal turn on well-established tort jurisprudence. The issues for review on this appeal distill to the following:

> 1. Did the Bankruptcy Court err in taking under advisement the issue of whether CBE waived its Seventh Amendment constitutional right to a trial by jury on its third party claims against Pillsbury for conversion and breach of fiduciary duty? Is the Bankruptcy Court's action reviewable on appeal? If so, is the Bankruptcy Court's decision to take the issue under advisement moot, given the dismissal of the other claims on summary judgment?

> 2. Did the Bankruptcy Court err in concluding that entitlement to the $500,000 deposit held by Pillsbury was genuinely in dispute? Did the Bankruptcy Court properly find that CBE could not demonstrate a right to immediate possession of the deposit and that Pillsbury was therefore entitled to summary judgment as a matter of law on CBE's claim of conversation?

---

[1] Initially, this Court will adopt the Bankruptcy Court's recital of undisputed facts contained in its Opinion, issued on April 23, 2014, granting summary judgment to third party defendants on Counts Two through Five of the First Amended Third Party Complaint. With respect to the issues before this Court, it does not appear that any of the material factual findings by the Bankruptcy Court judge are at issue. In fact, the only material issue in dispute noted by the Bankruptcy Court is the ultimate entitlement to the $500,000 deposit held by Pillsbury.

2

3. Given the pending controversy over entitlement to the $500,000 deposit that Pillsbury was holding in escrow, did the Bankruptcy Court err in finding that Pillsbury was entitled to summary judgment as a matter of law on CBE's claim of breach of fiduciary duty?

Before turning to the more substantive issues, the Court will quickly dispense with CBE's contention that the Bankruptcy Court denied its request for a jury trial on its third party claims against Pillsbury for conversion and breach of fiduciary duty. As Pillsbury stresses in its brief, this Court's appellate jurisdiction is limited by 28 U.S.C. § 158(a), entitled "final judgments, orders, and decrees [of the Bankruptcy Court]." 28 U.S.C. § 158(a)(1). Finality imports the notion that a decision is neither tentative, provisional, nor contingent.

It appears from the record in this case that the Bankruptcy Court, without objection by CBE's counsel, took under advisement the issue of whether the asset purchase agreement contract waived CBE's right to a jury trial. The Bankruptcy Court concluded that this issue should be deferred pending a decision on CBE's motion to withdraw the reference. (Appellee's Br. 12, ECF No. 19.) Obviously, the Bankruptcy Court's decision to take under advisement CBE's request for a jury trial was not the type of final order contemplated under 28 U.S.C. § 158(a)(1). Furthermore, a decision to defer action on an issue is not an appealable interlocutory or collateral order. 28 U.S.C. § 158(a)(2) and (3).

Therefore, this Court is without jurisdiction to weigh the providence of the bankruptcy judge's action. Moreover, even if this Court had jurisdiction to review the bankruptcy judge's course of action, it would be moot since the underlying claims for

3

which CBE sought a jury trial were dismissed on summary judgment. This claim will, therefore, be dismissed for want of jurisdiction.

In order to fully grasp the Bankruptcy Court's analysis, some back story is necessary to provide context. According to the uncontested factual findings by the Bankruptcy Court, Potomac initially filed a petition under Chapter 11 in January 2012. At that time, Potomac's primary secured creditor was Regions Bank, which held obligations exceeding $17,000,000. Potomac retained Pillsbury as its bankruptcy counsel. After some attempt at reorganization, the proceedings shifted to liquidation of Potomac's assets. In July 2012, Potomac sought and received leave of court for sale of substantially all of Potomac's core assets (Bankr. E.D. Va., April 24, 2014 Op. Granting Mot. Summ. J. 2–3, ECF No. 10 (hereinafter "Op.").)

On a parallel track, Potomac was simultaneously negotiating with CBE for the sale of its core assets. In furtherance of this process, Pillsbury, as counsel for Potomac, on September 13, 2012, sent specific instructions for wiring a good faith deposit to CBE's counsel. CBE was advised to send the $500,000 good faith deposit to Wells Fargo Bank naming Pillsbury as the beneficiary in trust for Pillsbury's client. In anticipation of a formal purchase agreement, CBE wired $50,000 to Pillsbury on September 17, 2012, and an additional $450,000 to Pillsbury on September 18, 2012. Communications accompanying the deposit indicated that the funds were to be held in trust for CBE. During this period, CBE was apparently exploring further financing from Great Eastern Investment Fund, LLC. (*Id.* at 4–5.)

On September 21, 2012, Potomac and CBE entered into an Asset Purchase

4

Agreement ("APA") for the sale of Potomac's core assets. The APA delineated the contractual obligation of each party prior to closing. An integral part of the APA was the requirement of a $500,000 deposit at its execution and an additional $500,000 deposit within fifteen days thereafter "pursuant to an escrow agreement to be executed by Seller, Buyer and the Deposit Escrow Holder on or before the Execution Date." (*Id.* at 5.) This escrow agreement was apparently never executed by the parties. (*Id.*)

The APA also spelled out the consequences of a default by either party. In the event of a buyer default, seller is entitled to the deposit. Conversely, in the event of seller default, the deposit was to be returned to the buyer. The APA also provided that the buyer must have sufficient funds available to consummate the transactions contemplated by the APA. (*Id.* at 6.) Under the APA, Potomac was also obligated to obtain an order of the Bankruptcy Court approving the sale to CBE. (*Id.*)

On October 2, 2012, six days after Potomac filed for leave of court to proceed with the asset sale, CBE's counsel advised Pillsbury that CBE had not been able to obtain the necessary financing and was not in a position to close on the appointed date. At that point, Potomac entered into an amendment to the APA affording CBE additional time to post the required additional $500,000 deposit. The deposit was never paid and no further extensions were agreed to. (*Id.* at 7.)

On November 13, 2012, the Bankruptcy Court approved the sale of the core assets to Potomac Supply, LLC, a subsidiary of American Industrial Products. On that same day, CBE demanded the return of its $500,000 deposit since the sale to CBE under the APA had been aborted. CBE also maintained that Potomac was in default under the APA

for failing to pursue Bankruptcy Court approval of the sale to CBE. (*Id.* at 8.)

By Consent Order entered on January 24, 2013, this case was converted to a Chapter 7 bankruptcy case. That same order approved the establishment of the Chesapeake Trust[2] (the "Trust") and the transfer of the bankruptcy estate's causes of action with respect to the deposit to the Trust. Under the terms of the order, Pillsbury, Regions Bank, and the bankruptcy estate are the beneficiaries of the Trust, "with their interests in the Trust property mirroring the amounts and priorities approved in the Settlement Order."[3] (*Id.* at 9.) "Pillsbury is the Trustee of the Trust and has sole decision-making authority with respect to any litigation or settlement with respect to the Fund Rights that are the subject of the Trust." (*Id.*) The $500,000 deposit is still in Pillsbury's attorney trust account. "Pillsbury represented to the [Bankruptcy] Court that the funds will not be transferred out of its trust account until the [Bankruptcy] Court orders a disposition of the funds." (*Id.* at 10.)

In the wake of such actions, CBE filed a third party complaint against Pillsbury claiming civil conspiracy, actual fraud and fraud in the inducement, conversion, breach of fiduciary duty, and negligence. By Order entered on April 24, 2014, the Bankruptcy Court granted Pillsbury's Motion for Summary Judgment and dismissed Counts Two through Five of the First Amended Third Party Complaint. CBE's appeal addresses only the dismissal of Counts Three and Four.

On appeal, CBE's principal claim of error on both Counts Three and Four is its

---

[2] The Chesapeake Trust is a nominal party in the proceedings below.
[3] The specific terms of the "Settlement Order" are described on page 8 of the Bankruptcy Court's Opinion granting summary judgment.

6

belief that there were genuine disputes of material fact precluding an award of summary judgment. In its supporting brief, CBE notes that "[i]n its Memorandum Opinion, the Bankruptcy Court recognized that the facts were 'highly contested.'" (Appellant's Br. 17, ECF No. 13.) However, as Pillsbury points out, the precise comment of the Bankruptcy Court was:

> The question of which party, Chesapeake Trust or CBE, is entitled to the Deposit is a matter that is highly contested. . . . Each party claims that the other committed the first material breach of the APA, or alternatively that certain breaches were waived. CBE demands the return of its deposit. Chesapeake claims that the Deposit has been forfeited, and that it is entitled to retain the Deposit. This is hardly the stuff of an indisputable right to immediate possession.

(Op. at 18.)

To preclude summary judgment, CBE must demonstrate proof of an actionable claim or that there is a genuine issue of material fact in dispute. Fed. R. Civ. P. 56(c). The record reveals neither. A material fact is one that is essential in establishing a critical element of the movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Even viewed in the light most favorable to CBE, the record reveals no *material* facts genuinely in dispute, despite CBE's hollow contention to the contrary. The issues for immediate review turn solely on whether CBE's claims of conversion and breach of fiduciary duty survive as a matter of law based on the record evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

CBE's claims of conversion and breach of fiduciary duty are grounded on the well-established law of the Commonwealth of Virginia. A direct descendent of common law, an actionable claim for conversion requires not only a colorable property interest,

7

but also an entitlement to immediate possession, existing at the time of conversion. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994); *Harvey v. Epes*, 53 Va. 153, 166 (1855). As the Supreme Court of Virginia noted in *United Leasing*, to support a claim of conversion, there must be proof of "a clear, definite, undisputed, and obvious property right in a thing to which they are entitled to immediate possession. . . ." *United Leasing*, 247 Va. at 306.

Here, CBE and the Chesapeake Trust have competing claims to the $500,000 held in escrow by Pillsbury. As the Bankruptcy Court noted, entitlement to the deposit is highly contested with both claimants contending the other was the first to commit a material breach of the APA. Any right of possession CBE may have must abide resolution of this issue. Consequently, as the Bankruptcy Court concluded, Pillsbury acted providently in holding the funds in its trust account until otherwise directed by the court. Such action is consistent with Pillsbury's obligation under Rule 1.15(b)(5) of the Virginia Rules of Professional Conduct. After having concluded that CBE was unable to show an immediate right of possession, the Bankruptcy Court properly granted Pillsbury's Motion for Summary Judgment on Count Two (conversion).

CBE's claim of breach of fiduciary duty flows from equally tenuous logic. Positing the existence of a fiduciary duty to CBE, there is no plausible evidence in the record of any arguable breach. As discussed above, Pillsbury continues to hold the deposit in its trust account awaiting direction from the Bankruptcy Court. In the interim, Pillsbury has no legal obligation to bypass the Bankruptcy Court and disburse the funds as it sees appropriate. Moreover, CBE advances no legal authority to support such

contention. This Court finds no error in the Bankruptcy Court's dismissal of the breach of fiduciary duty claim (Count Four).

For the reasons stated herein, this Court will affirm the judgment of the Bankruptcy Court. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 25, 2014
Richmond, VA